NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

LEONARD DAVID DODGE, *Plaintiff/Appellant*,

*v.*

LAKE HAVASU CITY POLICE PUBLIC SAFETY PERSONNEL
RETIREMENT SYSTEM BOARD, *Defendant/Appellee*.

No. 1 CA-CV 14-0137

FILED 2-17-2015

Appeal from the Superior Court in Mohave County
No. S8015CV201100546
The Honorable Lee F. Jantzen, Judge

**AFFIRMED**

COUNSEL

Robaina & Kresin, PLLC, Phoenix
By Thomas T. Griffin
*Counsel for Plaintiff/Appellant*

Ryan, Rapp & Underwood, PLC, Phoenix
By David L. Niederdeppe, Cynthia K. Kelley
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Randall M. Howe joined.

---

D O W N I E, Judge:

¶1            Leonard David Dodge appeals the superior court's determination he is ineligible for accidental disability benefits. For the following reasons, we affirm.

**BACKGROUND**

¶2            Dodge previously worked as a police officer with the Lake Havasu Police Department. In August 2009, he injured his back during an altercation with a criminal suspect. Dodge pursued medical treatment, but reported continuing pain and mobility issues. He returned to intermittent light duty assignment in November 2009.

¶3            In March 2010, Dodge applied for accidental disability benefits. The Lake Havasu City Police Public Safety Personnel Retirement System Board ("Board") voted to send Dodge for an independent medical examination ("IME"). *See* Ariz. Rev. Stat. ("A.R.S.") §§ 38-847(D)(9) (local boards may "appoint medical boards"), -859(A)(2) (medical board may evaluate eligibility for accidental disability pension). Dr. Daniel Sullivan conducted the IME. *See* A.R.S. § 38-859(B) (to determine existence of a disability, medical board "shall be composed of a designated physician or physicians").

¶4            Dr. Sullivan's IME report stated that, were he treating Dodge, he would discontinue "any further nonoperative measures" such as physical therapy and chiropractic care. He opined that one option was for Dodge to "live with" his current condition, which would mean he would "retire from active duty on the police force as he would be unable to perform his usual duties as a senior police officer without restriction." However, Dr. Sullivan's recommendation was to treat Dodge "surgically pending two additional diagnostic tests." He explained the proposed testing and surgery, concluding, "It is quite likely [Dodge] would get resolution of his radicular symptoms and very substantial improvement of his axial symptoms which would allow him to return to the force after he

2

fully recovered." In opining about whether Dodge had a physical condition that permanently prevented him from "performing a reasonable range of duties within [his] job description," Dr. Sullivan stated:

> The answer is absent having his spine "fixed", the patient would be permanently prevented from returning to full duty without restriction as a police officer. However, as I have opined above, *I do believe his problem is "fixable"*.

(Emphasis added.). Dodge did not undergo the diagnostic testing or surgery recommended by Dr. Sullivan.

**¶5** In May 2010, a majority of the Board voted to award Dodge accidental disability benefits.[1] The Public Safety Personnel Retirement System ("PSPRS") sought reconsideration of that decision, noting, *inter alia*, that the IME had concluded Dodge's condition "is **not permanent** but could be rectified through surgery."

**¶6** Upon reconsideration, the Board unanimously concluded Dodge was *not* eligible for accidental disability benefits. The Board heard from Dr. Sullivan, who, according to meeting minutes in the record, described the proposed surgery "as a very commonly done procedure with a post-operative recourse of about 6-8 weeks in a light duty capacity and 4-6 months for manual labor." Dr. Sullivan stated the risks of surgery were "minimal," with the "biggest risk" being "the satisfaction of the overall results."

**¶7** Dodge filed a complaint for judicial review in the superior court challenging the Board's ineligibility determination. He also applied for temporary disability benefits. A majority of the Board voted to award him temporary benefits, and PSPRS did not object.[2]

---

[1] The dissenting Board member noted Dr. Sullivan's opinion that Dodge's medical issues could be remedied.

[2] A "temporary disability" is defined as "a physical or mental condition that the local board finds totally and temporarily prevents an employee from performing a reasonable range of duties within the employee's department and that was incurred in the performance of the employee's duty." A.R.S. § 38-842(47). Temporary benefits may not be received for more than twelve months. A.R.S. § 38-844(I).

¶8          As the end of his one-year eligibility term for temporary benefits neared, Dodge asked the Board to appoint a new evaluating physician, and he once again applied for accidental disability benefits. The Board voted to obtain another IME. Dr. David Bauer conducted the second IME. His report states, in pertinent part:

> At this time, there is no physical condition which totally or permanently prevents [Dodge] from performing his job as a senior police officer for Lake Havasu City. . . . While he has some limitations in his range of motion, there are no objective physical findings.

¶9          In August 2011, the Board considered Dodge's second application for accidental disability benefits and, by unanimous vote, denied it. Dodge requested reconsideration, but the Board affirmed its decision. Dodge filed a second complaint for judicial review, and the superior court consolidated the two actions.

¶10          Because there were no transcripts of the Board proceedings, the superior court conducted a trial *de novo*. *See* A.R.S. § 12-910(C) (superior court shall conduct trial *de novo* if proceedings were "not stenographically reported or mechanically recorded so that a transcript might be made"). After considering documents from the Board proceedings, Dodge's testimony, and arguments of counsel, the court concluded Dodge had failed to establish the existence of a permanent disability. Among other things, the court noted Dr. Sullivan's surgical recommendation and found Dodge did not "take every step available to remedy the disability."

¶11          Dodge timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-913 and 38-847(J).

## DISCUSSION

¶12          The superior court accurately described its role in this matter, stating: "It is the Court's job in this case to act as a local board to conduct a hearing consistent with the parameters of A.R.S. § 38-841, *et seq.*, to determine if [Dodge] has or had an accidental disability and whether or not that accidental disability is temporary or permanent." In this context, the superior court was acting as a trier of fact, not as an appellate body.

¶13          This Court does not reweigh the evidence when reviewing a decision under the Administrative Review Act. *See DeGroot v. Ariz. Racing Comm'n*, 141 Ariz. 331, 335-36, 686 P.2d 1301, 1305-06 (App. 1984). We determine only whether substantial evidence exists to support the

underlying decision. *See Siler v. Ariz. Dep't of Real Estate,* 193 Ariz. 374, 378, ¶ 14, 972 P.2d 1010, 1014 (App. 1998). We view the evidence in the light most favorable to upholding the decision. *Prebula v. Ariz. Dep't of Econ. Sec.,* 138 Ariz. 26, 30, 672 P.2d 978, 982 (App. 1983). However, we review issues of statutory interpretation and other questions of law *de novo. Dressler v. Morrison,* 212 Ariz. 279, 281, ¶ 11, 130 P.3d 978, 980 (2006).

**¶14** At the outset of the proceedings, the court inquired about the burden of proof. Dodge's attorney responded: "I guess I don't know who has the burden on that, Your Honor. It's a complaint pursuant to the Administrative Appeal Act, but since it's a trial de novo, there's nothing really being appealed. You are sitting in the shoes of the Board making a decision." The Board's counsel argued that "the ultimate burden to satisfy the Court that the individual is eligible for a pension would rest with the plaintiff." Dodge did not disagree and has not argued on appeal that it was the Board's burden to prove ineligibility. *Cf.* Ariz. Admin. Code R2-19-119(B)(1) (in administrative matters before office of administrative hearings, "[t]he party asserting a claim, right, or entitlement has the burden of proof"); *Campbell v. Superior Court,* 106 Ariz. 542, 550-51, 479 P.2d 685, 693-94 (1971) ("[I]t is well established in this jurisdiction that in a trial *de novo* the burden remains the same whether it is in relation to an appeal from the justice court or an appeal from an administrative agency.").

**¶15** Dodge was eligible for an accidental disability pension if his employment was "terminated by reason of accidental disability." "Accidental disability" is defined as "a physical or mental condition that the local board finds totally and permanently prevents an employee from performing a reasonable range of duties within the employee's job classification and that was incurred in the performance of the employee's duty."[3] A.R.S. § 38-842(1). A finding of accidental disability "shall be based on medical evidence by a designated physician or a physician working in a clinic that is appointed by the local board." A.R.S. § 38-859(C); *see also* A.R.S. § 38-847(K) ("When making a ruling, determination or calculation, the local board shall be entitled to rely on information furnished by the employer, a medical board, the board of trustees, independent legal counsel or the actuary for the system.").

**¶16** We agree with Dodge that he was not required to prove his asserted disability would continue into perpetuity in order to qualify for

---

[3] It is undisputed Dodge's injury occurred in the performance of his duties as a police officer.

accidental disability benefits. The statutory scheme contemplates circumstances in which a disability previously determined to be "permanent" may cease. *See* A.R.S. §§ 38-844(B) (benefits continue until plan member dies or disability ceases), -844(E) (pension terminates if member "[h]as sufficiently recovered, in the opinion of the local board, based on a medical examination by a designated physician"). We disagree, though, with Dodge's contention that the superior court imposed an additional, impermissible requirement — specifically, that he "undergo a major surgical procedure" to qualify for accidental disability benefits.

¶17        The superior court's ruling states, in pertinent part:

> The weight of the evidence shows the Plaintiff has not been able to return to work to perform his duties as a police officer since the incident in question and that the injury was caused by the incident. However, Dr. Sullivan's IME said there was the potential for surgery to fix the injury. Plaintiff has decided not to pursue the surgery option because of the risks involved. Because the Plaintiff has chosen not to take every step available to remedy the disability, based on the evidence and the conclusions found in Dr. Bauer's IME,[4] there is insufficient evidence before the Court to show that this disability is permanent.

The superior court concluded Dodge failed to carry his burden of proving the existence of a "permanent" disability because, among other things, he failed to pursue treatment specifically recommended by the medical board (Dr. Sullivan in this case) that could have resolved his problems. This was a proper consideration.

¶18        Had Dodge participated in the recommended diagnostic testing and learned he was not a surgical candidate, the outcome might have been different. Similarly, had he undergone the recommended surgery, but experienced little to no improvement, he may have been able to prove the existence of a permanent injury. Neither of these scenarios transpired, though, because Dodge did not follow the medical board's recommendations. There was no suggestion the recommended tests carried any risks. Nor was there medical evidence of any serious risks associated with the recommended surgery, such that a trier of fact might

---

[4]        As Dodge notes in his opening brief, the superior court's reference to "Dr. Bauer's IME" may have been "intended as a reference to Dr. Sullivan's IME Report."

conclude Dodge had reasonably rejected the medical board recommendations. The only medical evidence properly before the court on this point was Dr. Sullivan's assessment that the risks of surgery were "minimal." On this record, substantial evidence supports the superior court's determination that Dodge failed to establish his eligibility for accidental disability benefits.

## CONCLUSION

¶19 For the reasons stated, we affirm the judgment of the superior court.



Ruth A. Willingham · Clerk of the Court
FILED: ama