NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

TRI-STATE CABINET SOLUTIONS LLC, *Appellant*,

*v.*

ARIZONA DEPARTMENT OF ECONOMIC SECURITY, an agency,

and

FLYNN McCARLEY, *Appellees*.

No. 1 CA-UB 17-0184
FILED 5-29-2018

Appeal from the A.D.E.S. Appeals Board
No.  U-1500303-001-BR

**AFFIRMED**

COUNSEL

Tri-State Cabinet Solutions, LLC, Fort Mohave
*Appellant*

Arizona Attorney General's Office, Phoenix
By Carol A. Salvati
*Counsel for Appellee Arizona Department of Economic Security*

Flynn McCarley, Henderson, NV
*Appellee*

_____

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Jennifer M. Perkins joined.

_____

**C A T T A N I**, Judge:

¶1          Tri-State Cabinet Solutions appeals from the final administrative decision in this unemployment-benefits case, arguing that the Appeals Board erred by concluding that former Tri-State employee Flynn McCarley was discharged for reasons other than misconduct. For reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2          Tri-State is a general construction company providing finish carpentry and woodwork, and it had a contract to provide all millwork for a local home improvement store. McCarley worked for Tri-State as an installer for approximately 14 months before Tri-State discharged him on July 9, 2015.

¶3          McCarley applied for unemployment benefits and was found eligible by a determination of deputy. Tri-State timely filed an administrative appeal, alleging it had discharged McCarley for misconduct based on two instances of poor workmanship (as well as unspecified insubordination and unprofessional demeanor) between January and April 2015 and lack of available work in May and June 2015.

¶4          At the resulting Appeal Tribunal hearing, Clifford Copeland (one of Tri-State's owners) testified that the final incident precipitating McCarley's discharge was that as of June 2015, the home improvement store would not allow McCarley to work on jobs because of his poor workmanship. Copeland gave an example of an April 2015 project in which flooring installed by McCarley had to be torn out and replaced because it was installed poorly. Copeland testified that McCarley had been verbally warned about his workmanship at least six times.

¶5          Copeland also noted that Tri-State did not schedule McCarley to work after mid-June because business was slow that month (other than projects for the home improvement store). Copeland also testified that McCarley was insubordinate in January and March 2015, and had an

argument with the co-owner in June 2015, but Copeland did not provide any description or detail. Copeland also suggested that McCarley had refused to accept written documentation about his discharge, although the only documentation Tri-State submitted for the hearing was an annual evaluation with poor marks dated June 1 (over a month before the discharge) and not signed by McCarley.

¶6 McCarley, on the other hand, testified that he had never received any warning about poor workmanship. He acknowledged having to tear out flooring from the April 2015 project, but attributed the issue to a defective product rather than poor installation. McCarley further testified that the home improvement store's request that Tri-State not assign him to the store's projects—a request that he stated came in April—was not based on the quality of his work, but rather stemmed from a private dispute unrelated to his work with Tri-State (he said local store management was irritated that McCarley went through their corporate office to resolve an issue on a side project). McCarley denied ever seeing the purported annual evaluation or any written documentation related to his performance or his discharge.

¶7 The Appeal Tribunal ruled in favor of Tri-State, finding that McCarley had been discharged for repeated poor performance, constituting work-related misconduct. *See* A.A.C. R6-3-51300(A). McCarley timely petitioned for review,[1] and the Appeals Board reversed. The Board noted that Tri-State had presented only a single instance of poor workmanship (which McCarley attributed to defective materials, not poor workmanship) that occurred several months before discharge, undermining the link between the asserted poor workmanship and McCarley's eventual firing. The Board rendered its own findings of fact and concluded that McCarley was discharged for reasons other than disqualifying misconduct: (1) the home improvement store had directed Tri-State not to use McCarley on its

_____

[1] The only copy of McCarley's petition for review of the Appeal Tribunal's decision that was in the originally filed record in this case appeared to be untimely, and this court granted Tri-State's application for appeal with a directive that that parties address whether the Appeals Board accordingly had authority to review the Appeal Tribunal's decision. *See* A.R.S. § 23-671; A.A.C. R6-3-1503(C). The Arizona Department of Economic Security thereafter supplemented the administrative record to include a timely filed petition for review submitted by McCarley less than 30 days after the Appeal Tribunal's decision asserting that his "dismissal was unjust." *See* A.R.S. § 23-671(D) (stating that the Appeal Tribunal's decision becomes final unless challenged within 30 days).

projects, but had done so because of a private dispute, not because of poor workmanship, and (2) Tri-State lacked other work for him.

¶8        Tri-State timely requested review, asserting that McCarley had performed poorly on several projects from January to June 2015 (not just one project three months before termination), offering additional details regarding poor workmanship, and attaching additional documents. The Appeals Board affirmed its prior decision. The Board declined to consider Tri-State's additional evidence that could have been (but was not) presented during the hearing. The Board further noted that Tri-State had failed to provide evidence at the hearing of any poor work performance by McCarley after the April 2015 flooring installation, and concluded that Tri-State had failed to prove a causal link between that incident and McCarley's discharge in light of the three months that elapsed between the two events. *See* A.A.C. R6-3-51385(B).

¶9        Tri-State timely filed an application for appeal to this court, which we granted. We have jurisdiction under A.R.S. § 41-1993(B).

## DISCUSSION

¶10        Tri-State challenges the sufficiency of the evidence to support the Appeals Board's decision that McCarley was discharged for reasons other than work-related misconduct, and further urges that the Board erred by declining to consider additional evidence attached to Tri-State's request for review.

¶11        On review, we are bound to accept the Appeals Board's findings of fact unless they are arbitrary, capricious, or an abuse of discretion, and we will affirm the Board's decision as long as substantial evidence supports it. *Rice v. Ariz. Dep't of Econ. Sec.*, 183 Ariz. 199, 201 (App. 1995); *see also Prebula v. Ariz. Dep't of Econ. Sec.*, 138 Ariz. 26, 30 (App. 1983) (noting that the Board's decision will be affirmed "if it is supported by any reasonable interpretation of the record"). We similarly defer to the Board's assessment of witness credibility. *See Anamax Mining Co. v. Ariz. Dep't of Econ. Sec.*, 147 Ariz. 482, 486 (App. 1985).

¶12        A worker is disqualified from receiving unemployment benefits if "discharged for wilful or negligent misconduct connected with the employment." A.R.S. § 23-775(2). Poor work performance may constitute misconduct if the worker knowingly fails to exercise ordinary care and diligence, or if the worker repeatedly does so negligently. A.A.C. R6-3-51300(A)(1), (3).

4

¶13         The employer has the burden to show that the discharge was for a disqualifying reason; if the worker denies misconduct, the employer must present substantiating evidence to prove its allegations of misconduct. *See* A.A.C. R6-3-51190(B)(2)(b), (c). Moreover, the worker is disqualified for benefits due to misconduct only if the misconduct was the reason for the discharge. A.A.C. R6-3-51385(A). If the discharge does not promptly follow the misconduct, the employer must prove the misconduct caused the discharge. A.A.C. R6-3-51385(B). And if an "unreasonable length of time" elapsed between misconduct and discharge, "the employer has in effect condoned the act, and the subsequent discharge is not for work-connected misconduct." A.A.C. R6-3-51385(B).

¶14         Here, the record supports the Appeals Board's determination that McCarley was discharged for reasons other than work-related misconduct. Although Copeland testified generally that McCarley received six warnings about poor workmanship over the course of his employment, Tri-State provided no evidence—either by testimony at the hearing or in the detailed narrative attached to its initial appeal—of any poor performance after the April 2015 flooring incident. Even assuming the April incident would qualify as poor performance constituting misconduct—contrary to McCarley's testimony that the issue was caused by defective materials—the Appeals Board could reasonably conclude that the passage of three months between that incident and discharge (without proof of further instances of poor performance) broke any causal link between the two. *See* A.A.C. R6-3-51385(B).

¶15         Moreover, Copeland characterized the final issue leading to McCarley's discharge as the fact that the home improvement store excluded him from its projects. But Tri-State's initial appeal stated that the store excluded McCarley from its projects "[s]hortly after" the April 2015 flooring incident, which still leaves an arguably significant delay before discharge in July 2015. And although Copeland testified that the home improvement store would not work with McCarley due to poor workmanship, McCarley testified that the issue stemmed from his justified complaint to the store's corporate office in an unrelated dispute, so the Appeals Board had a basis to conclude that even this did not reflect work-related misconduct. *See Anamax Mining Co.*, 147 Ariz. at 486 ("[T]he credibility of witnesses is a matter peculiarly within the province of the trier of facts."). The record thus supports the Appeals Board's conclusion that Tri-State discharged McCarley for reasons other than work-related misconduct.

¶16         Tri-State objects to the Appeals Board's decision not to consider additional evidence that Tri-State attached to its request for

review.  The rules governing the administrative process require that "[a]ll interested parties shall be ready and present with all witnesses and documents at the . . . hearing and shall be prepared at such time to dispose of all issues and questions involved in the appeal or petition."  A.A.C. R6-3-1502(L).  The Appeals Board has discretion to allow the taking of additional evidence.  *See* A.R.S. §§ 23-672(C), 23-674(D); A.A.C. R6-3-1504(B)(2); *see also* A.A.C. R6-3-1504(A)(1)(c) (newly discovered evidence as ground for review).  But here, the notice of hearing specified that "whether the claimant was discharged for misconduct" was an issue to be determined at the Appeal Tribunal hearing, and Tri-State offered no explanation for why the late-submitted documents and details bearing on McCarley's alleged misconduct could not have been presented at the hearing. Accordingly, Tri-State has not shown that the Appeals Board abused its discretion by declining to consider additional evidence.

**CONCLUSION**

¶17        We affirm.

